# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **GRAND SLAM CLUB/OVIS**, an Alabama corporation,<br><br>    Plaintiff,<br><br>v.<br><br>**INTERNATIONAL SHEEP HUNTERS ASSOCIATION FOUNDATION, INC.**, a former California corporation sometimes doing business as ISHA; and **FOUNDATION FOR NORTH AMERICAN WILD SHEEP**, an Iowa corporation sometimes doing business as FNAWS,<br><br>    Defendants. | Case No.:  2:06-CV-4643-VEH |

## MEMORANDUM OPINION AND ORDER

**I.    INTRODUCTION**

Plaintiff Grand Slam Club/Ovis's ("GSCO") initiated this trademark and copyright infringement case against Defendants International Sheep Hunters Association Foundation, Inc. ("ISHAF") and Foundation for North American Wild Sheep ("FNAWS") (collectively referred to herein as the "Foundation") (Doc. #1) on November 9, 2006.  GSCO filed an amended complaint (Doc. #25) on April 5, 2007. The Foundation filed its final amended answer (Doc. #37) on May 21, 2007.

The court has before it GSCO's Motion for Preliminary Injunction (Doc. #39) (the "PI Motion") filed on July 13, 2007, and related supporting documents. (*See* Docs. #40-41, #49-51, #57, #58, #60). This PI Motion is based upon GSCO's Lanham Act claims only and is opposed by the Foundation. (Docs. #45-46).

The court held a hearing on GSCO's PI Motion which initially began on Friday, August 17, 2007, in Birmingham, and was completed on Saturday, September 29, 2007, in Anniston.[1] Pursuant to the court's order (Doc. #59) entered on August 22, 2007, after the initial hearing, the parties filed additional documents relating to GSCO's PI Motion, including numerous affidavits and other documentary evidence. (*See* Docs. #70-76, #78, #80, #83-85, #89).[2] Also consistent with this August 22, 2007 order, on September 26, 2007, GSCO filed an updated set of Proposed Findings of Fact and Conclusions of Law (Doc. #90), while the Foundation chose to file nothing, and instead, as stated at the September 29, 2007 hearing, relied upon its initial findings of fact/conclusions of law filing made in conjunction with GSCO's

---

[1] On August 23, 2007, GSCO filed an Emergency Motion for Expedited Consideration of Plaintiff's Preliminary Injunction Motion (Doc. #61) (the "Emergency Motion"), in which it sought a preliminary injunctive ruling prior to the completion of the evidentiary hearing. The court denied GSCO's Emergency Motion (Doc. #69) on August 31, 2007.

[2] As orally ruled on at the September 29, 2007 hearing, the following documents were stricken from the record for the reasons stated in open court: Docs. #71-72, #89.

Emergency Motion (Doc. #66) on August 27, 2007.

As discussed more fully below, the court concludes that GSCO has established its burden on seeking preliminary injunctive relief as to the registered marks and the unregistered marks that are the subject of its PI Motion. Accordingly, GSCO's PI Motion is due to be granted.

## II.   STATEMENT OF FACTS

This case arises out of the use of both registered and unregistered marks in the field of wild sheep hunting. GSCO describes itself (and its predecessor organization, The Grand Slam Club) as a sheep hunting conservation and record keeping organization that documents and bestows awards for certain defined criteria. (Doc. #41 ¶ 2).

The Foundation describes FNAWS as a non-profit corporation incorporated in 1977 and involved in wild sheep conservation and education. (Doc. #45 at Lee Aff. ¶ 5). More specifically, FNAWS has a partial mission "to promote and enhance increasing populations of indigenous wild sheep, to safeguard against their decline or extinction, and to fund programs for the professional management of these populations." (*Id.*). The Foundation describes ISHA as "an international record keeping and conservation organization" which has been in operation as a non-profit corporation since 1975. (*Id.* ¶ 6). In 2005, FNAWS and ISHA joined their operations

together.  (*Id.* ¶ 7).

    A.    **Registered Marks**

GSCO has filed into evidence registrations pertaining to the following marks that according to the documentation all relate to the field of wild sheep hunting:  (1) trademark for GRAND SLAM (Doc. #41 at Ex. B) for use in publications; (2) service mark for GRAND SLAM (Doc. #41 at Ex. B) for use in conferences and award recognition; (3) GRAND SLAM OF NORTH AMERICAN WILD SHEEP for use in conferences and award recognition (Doc. #80 at Ex. 23); (4) service mark for OVIS WORLD SLAM  (Doc. #41 at Ex. B) for use in conferences and award recognition; and (5) service mark for CAPRA WORLD SLAM (Doc. #41 at Ex. B) for use in conferences and award recognition.³

    B.    **Unregistered Marks**

Additional marks, the Foundation's use of which GSCO complains about, are unregistered, including (1) CAPRA SLAM; (2) GRAND SLAM OF SHEEP HUNT DRAWINGS; (3) 3/4 SLAM; (4) 3/4 GRAND SLAM; (5) 3/4 SLAMMER; (6) 1/2 SLAM; (7) 1/2 GRAND SLAM; and (8) 1/2 SLAMMER.  (*See* Doc. #39 at Ex. 1

---

³While the CAPRA WORLD SLAM mark registration denotes that its use is in the area of wild sheep hunting, other evidence in the record instead indicates that the term describes GSCO's "award for certain takings of international goats[.]" (*Compare* Doc. #90 ¶ 37 *and* Doc. #25 at Exs. G, U *with* Doc. #41 ¶ 2 *and* Doc. #90 ¶ 60).

(Proposed Order)). GSCO describes these unregistered marks as derivatives of its GRAND SLAM mark. GSCO has filed registration applications (but has not yet not obtained a registration) for the marks of 3/4 SLAM and 3/4 GRAND SLAM. (Doc. #1 at Ex. J; Doc. #50 ¶ 29).

### III.  ANALYSIS

#### A.  Registered Marks

"[U]nder the Lanham Act, registration by itself does not enlarge a registrant's substantive rights in a mark. It does, however, confer procedural advantages which affect the burden of proof." *American Heritage*, 494 F.2d at 10. More specifically, the Lanham Act expressly provides:

> (b) Certificate as *prima facie* evidence
>
> A certificate of registration of a mark upon the principal register provided by this chapter shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate, subject to any conditions or limitations stated in the certificate.

15 U.S.C. § 1057(b).

As the Eleventh Circuit has stated, "registration is *prima facie* evidence of the registrant's ownership of the mark and of the registrant's exclusive right to use the mark in commerce in connection with the services specified in the registration

certificate[; therefore, it] is sufficient to establish *prima facie* (1) the required prior use (2) of a registrable mark (3) which is likely to be confused with another's use of the same or a similar mark." *American Heritage*, 494 F.2d at 10 (internal citations omitted).

While the court recognizes the statutory presumptions that flow from the registration of GSCO's registered service marks, it is black letter law that those presumptions are, in fact, rebuttable. *See McCarthy on Trademarks and Unfair Competition* (4th ed.) § 32:136. Accordingly, "[o]nce a mark has been registered, proof of registration is *prima facie* evidence of the registrant's right to use the mark, but it does not preclude one who is sued for trademark infringement from proving any legal or equitable defense or defect which might have been asserted if such mark had not been registered."[4] *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1984 (5th Cir. 1980) (citing 15 U.S.C. § 1115(a)) (internal quotations omitted).[5]

Based upon the evidence and argument presented both in support and

---

[4]None of GSCO's registered marks are incontestable, which status applies when "a registrant has used his mark in connection with the goods or services specified on his registration for five continuous years after the registration date[.]" *Soweco*, 617 F.2d at 1184 (citing 15 U.S.C. § 1065).

[5]In *Bonner v. City of Prichard*, 661 F.2d 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions rendered by the former Fifth Circuit prior to October 1, 1981.

opposition to GSCO's PI Motion, the court concludes that the Foundation has failed to rebut the statutory presumptions that flow from GSCO's registrations of the following marks: (1) trademark for GRAND SLAM; (2) service mark for GRAND SLAM; (3) GRAND SLAM OF NORTH AMERICAN WILD SHEEP; (4) service mark for OVIS WORLD SLAM; and (5) service mark for CAPRA WORLD SLAM.

### B.     Unregistered Marks

The court also concludes that the unregistered marks are derivations of and are confusingly similar to the registered marks. Therefore, there is no reason to reach the issue of whether GSCO has independently established trademark or service marks rights in the unregistered marks. Instead, all the unregistered marks are protected under the umbrella of the registered marks.

### C.     Standard for Preliminary Injunction

A preliminary injunction is an "extraordinary and drastic remedy" that should be granted only if the moving party has clearly established: (1) a substantial likelihood that plaintiff will prevail on the merits; (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to the plaintiff outweighs the threatened harm the injunction may do to the defendant; and (4) that granting the preliminary injunction will not be adverse to public interest. *Cunningham v. Adams*, 808 F.2d 815 (11th Cir. 1987); *see also U.S.*

*v. Lambert*, 695 F.2d 536, 539 (11th Cir. 1983); *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *Kaisha v. Swiss Watch International, Inc.*, 188 F. Supp. 2d 1350, 1353 (S.D. Fla. 2002). The moving party carries the burden of persuasion as to each of these four elements. *U.S. v. Jefferson County*, 720 F.2d 1511, 1519 (11th Cir. 1983), *reh'g denied*, 724 F.2d 978 (11th Cir. 1984). *See also Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003); *McDonald's Corp.*, 147 F.3d at 1306. When analyzing the first two elements, the review "require[s] a delicate balancing of the probabilities of ultimate success at final hearing with the consequences of immediate irreparable injury which could possibly flow from the denial of preliminary relief." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1241 (11th Cir. 2005) (quoting *Siegel v. LePore*, 234 F.3d 1163, 1178 (11th Cir. 2000) (en banc)).

Granting a motion for a preliminary injunction is "the exception rather than the rule." *Lambert*, 695 F.2d at 539 (quoting *Texas v. Seatrain International, S.A.*, 518 F.2d 175, 179 (5th Cir. 1975)). A district court's order granting or denying a motion for preliminary injunction is reviewed on appeal for abuse of discretion. *McDonald's Corp.*, 147 F.3d at 1306; *see also Buckeye v. Baker Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988) (citing *U.S. v. Jefferson County*, 720 F.2d 1511, 1519 (11th Cir. 1983)). "Those judgments, about the viability of a plaintiff's claims and the

balancing of equities and the public interest, are the district court's to make and we will not set them aside unless the district court has abused its discretion in making them." *Cumulus Media, Inc. v. Clear Channel Communications, Inc.*, 304 F.3d 1167, 1171 (11th Cir. 2002) (citation omitted). "When reviewing a district court's entry of a preliminary injunction, [the Eleventh Circuit] review[s] findings of fact under a clearly erroneous standard, and conclusions of law *de novo*." *Horton v. City of St. Augustine, Fla.*, 272 F.3d 1318, 1326 (11th Cir. 2001) (citation omitted).

"In order for a preliminary injunction to issue, the nonmoving party must have notice and an opportunity to present its opposition to the injunction." *Four Seasons Hotels and Resorts*, 320 F.3d at 1210. Sufficiency of notice "is a matter left within the discretion of the trial court." *United States v. Alabama*, 791 F.2d 1450, 1458 (11th Cir. 1986). The notice requirement "implies a hearing in which the defendant is given a fair opportunity to oppose the application and to prepare for such opposition." *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 434, 94 S.Ct. 1113, 1122 (1974). The underlying principal of providing the nonmoving party with notice and an adequate opportunity to respond is carefully honored by the courts. *Four Seasons Hotels and Resorts*, 320 F.3d at 1210 (internal citations and quotation marks omitted). The decision to determine the appropriate amount of notice is left to the district court's discretion; in addition, short notice may be adequate under

certain circumstances. *Id.* at 1212.

An evidentiary hearing is not always required prior to the issuance of a preliminary injunction; however, "where facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue, an evidentiary hearing must be held." *McDonald's Corp.*, 147 F.3d at 1312 (citing *All Care Nursing v. Bethesda Memorial Hospital, Inc.*, 887 F.2d 1535 (11th Cir. 1989)). When conflicting facts place "in serious dispute issues central to a party's claims and much depends upon the accurate presentation of numerous facts, the trial court errs in not holding an evidentiary hearing to resolve these hotly contested issues." *Four Seasons Hotels and Resorts*, 320 F.3d at 1211 (quoting *All Care Nursing*, 887 F.2d at 1539) (internal marks omitted)).

### D. Substantively, GSCO's PI Motion is due to be granted as to both the registered and unregistered marks.

#### 1. Substantial likelihood of prevailing on the merits

"[T]he word 'substantial' does not add to the quantum of proof required to show a likelihood of success on the merits." *Shatel Corp. v. Mao Ta Lumber and Yacht Corp.*, 697 F.2d 1352, 1356 (11th Cir. 1983). More specifically, the Eleventh Circuit has held that the "substantial likelihood" test merely requires that the moving party "show the probability that plaintiff will succeed on the merits." *Id.* (internal marks omitted).

Based upon the unrebutted statutory presumptions that flow from GSCO's registrations, GSCO has satisfied its burden of demonstrating the probability that it will likely succeed on the merits at trial as to its registered marks. Similarly, based upon the court's finding of confusing similarity between the registered and unregistered marks, GSCO has also shown that it is likely to prevail on the merits as to the unregistered marks.

### 2. Irreparable injury

"The rule is that the irreparable injury requirement is satisfied if a likelihood of confusion is proven because trademark infringement damages are by their nature irreparable." *See McCarthy on Trademarks and Unfair Competition* (4th ed.) § 30:47 (footnote omitted); *see also McDonald's*, 147 F.3d at 1310 ("[T]his Circuit has held that "a sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of . . . [a] substantial threat of irreparable harm.") (internal quotations, footnote and citations omitted); id., 147 F.3d at 1310 ("Consequently, the district court correctly concluded that McDonald's made a sufficient showing of irreparable injury to justify entry of the preliminary injunction."). Accordingly, GSCO has satisfied the element of irreparable injury.

### 3.     Balancing of the equities

A balancing of the equities calls for the issuance of an injunction to protect GSCO's trademark and service mark rights. As stated in open court at the September 29, 2007, hearing, the Foundation claims that all of its usages of the contested marks expressly say FNAWS or ISHA. (*See, e.g.*, Doc. #45 at Thorton Aff. at Ex. 49 at 3; Doc. #41 at Ex. J at 2, which examples are also attached to this order). Moreover, GSCO has significantly contributed to any confusion over the use of the marks through its participation at prior conventions sponsored by the Foundation and otherwise. Finally, there is a short period of time during which this preliminary injunction would be in place as the case is set for trial beginning January 22, 2008,[6] which is less than four (4) months away, and relatedly, the trial will take place before either party's 2008 convention. (Both are currently set for February, 2008.)

By striking the balance this way, GSCO's trademark rights will be respected through the issuance of an order that requires the Foundation and ISHA to expressly clarify that it is the source (and not GSCO) of any awards or drawings that pertain to Foundation-sponsored conventions (and similarly to any related marketing or promotional materials) that incorporate the use of the contested marks. Relatedly, any

---

[6] Because the courthouse is closed on January 21, 2008, in recognition of Martin Luther King Jr.'s birthday, the trial of this case will actually begin in Birmingham on Tuesday, January 22, 2008, at 9:00 a.m. (*See* Doc. #59 at 5; Fed. R. Civ. P. 77(c)).

harm done to the Foundation will be minimal because its stated current customary practice is to already include FNAWS or ISHA in the advertising and naming of any awards or drawings relating to its conventions.

### 4. Public interest

Issuing a preliminary injunction is in favor of the public interest to avoid any confusion among the group of wild sheep hunter consumers over who is sponsoring an award or drawing in connection with either party's 2008 convention. *See Nailtiques Cosmetic Corp. v. Salon Sciences, Corp.*, 41 U.S.P.Q.2d 1995, 1999 (S.D. Fla. 1997) ("The Court must give considerable weight to this public interest [of avoiding consumer confusion caused by infringement], and should therefore resolve any doubts in favor of granting a preliminary injunction. The issuance of the requested injunctive relief would aptly serve this public interest."); *Council of Better Business Bureaus, Inc. v. Better Business Bureau of South Florida, Inc.*, 200 U.S.P.Q. 282, 301 (S.D. Fla. 1978) ("[T]he public as a whole has a paramount interest not to be confused by Defendant's infringement.").

While GSCO argues that labeling an award or drawing with FNAWS or ISHA is insufficient as to its request for preliminary injunctive relief, the court finds that the parties' undisputed characterization of the market of wild sheep hunters as a "niche within a niche" means that the likelihood of confusion is significantly smaller in

degree than that level to be expected within a less sophisticated market of general consumers. Therefore, the court finds that, on the balance, a preliminary injunction should be issued prohibiting the Defendants' use of GSCO's registered and unregistered marks except with either FNAWS or ISHA included in the name of the award or drawing in at least as prominent fashion as the examples attached to this order.[7]

## IV. CONCLUSION

Therefore, as set forth above, GSCO's PI Motion is **GRANTED**. Accordingly, the court will enter a preliminary injunction in GSCO's favor relating to the following registered marks: (1) trademark for GRAND SLAM; (2) service mark for GRAND SLAM; (3) GRAND SLAM OF NORTH AMERICAN WILD SHEEP; (4) service mark for OVIS WORLD SLAM; and (5) service mark for CAPRA WORLD SLAM. The court will also issue a preliminary injunction in GSCO's favor pertaining to the following unregistered marks: (1) CAPRA SLAM; (2) GRAND SLAM OF SHEEP HUNT DRAWINGS; (3) 3/4 SLAM; (4) 3/4 GRAND SLAM; (5) 3/4 SLAMMER; (6) 1/2 SLAM; (7) 1/2 GRAND SLAM; and (8) 1/2 SLAMMER. The court will hold a separate hearing as to the exact language of the injunction and the amount of bond.

---

[7]All motions to strike, not otherwise ruled on in open court on September 29, 2007, are therefore **MOOT**.

The parties are hereby **ORDERED** to confer, no later than October 16, 2007, and to call the court's courtroom deputy to set a mutually agreeable date for such hearing. The court will permit counsel to participate in such hearing by telephone, if they wish to do so.

    **DONE** and **ORDERED** this the 9th day of October, 2007.

                                                   **VIRGINIA EMERSON HOPKINS**
                                                   United States District Judge