## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **GRAND SLAM CLUB / OVIS,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **vs.** | } | **CASE NO. 2:06-cv-4643-SLB** |
| | } | |
| **INTERNATIONAL  SHEEP HUNTERS  ASSOCIATION FOUNDATION,  INC.,** *a former California corporation sometimes d/b/a ISHA*; **FOUNDATION FOR NORTH AMERICA WILD SHEEP,** *an Iowa corporation sometimes d/b/a FNAWS,* | } } } } } } } } } } | |
| | } | |
| **Defendants.** | } | |
| | } | |
| | } | |
| **INTERNATIONAL  SHEEP HUNTERS  ASSOCIATION FOUNDATION,  INC.,** *a former California corporation sometimes d/b/a ISHA*; **FOUNDATION FOR NORTH AMERICA WILD SHEEP,** *an Iowa corporation sometimes d/b/a FNAWS,* | } } } } } } } } } | |
| | } | |
| **Counter-claimants,** | } | |
| | } | |
| **vs.** | } | |
| | } | |
| **GRAND SLAM CLUB / OVIS,** | } | |
| | } | |
| **Counter-defendant.** | } | |

## FINDINGS AND CONCLUSIONS

This case is currently before the court on defendant International Sheep Hunters Association Foundation, Inc. ("ISHA") and defendant Foundation for North American Wild Sheep's ("FNAWS") (collectively the "Defendants") Post-Judgment Motion Pursuant to Rule 52 of the Federal Rules of Civil Procedure.  (Doc. 249.)[1]  Specifically, pursuant to Rule 52(a),[2] Defendants request that this court enter findings of fact and conclusions of law regarding their remaining affirmative defenses and their counterclaim for cancellation of plaintiff Grand Slam Club/OVIS's ("GSCO") trademark registrations.[3]  (Doc. 252 at 2.) Although GSCO filed an Opposition to Defendants' Post-Judgment, GSCO does not object to the court entering findings of fact and conclusions of law, but instead argues that they "should reflect how Defendants' affirmative defenses and counterclaims fail as a matter of law and fact." (Doc. 274 at 1.)  Defendants filed a reply to GSCO's Opposition.  (Doc. 281.)

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

[2] Rule 52(a) of the Federal Rules of Civil Procedure states in pertinent part that:

In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately.  The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court.

Fed. R. Civ. P. 52(a)(1).

[3] Defendants' affirmative defenses include laches, acquiescence, unclean hands, and abandonment.  (Doc. 37 at 20, ¶ 2, 29, ¶ 35; Doc. 252 at 2.)  Defendants' counterclaim seeks cancellation of GSCO's trademark registrations pursuant to section 37 of the Lanham Act, codified at 15 U.S.C. § 1119.  (*See* Doc. 37 at 42, ¶¶ 55-61; Doc. 252 at 2 n.3.)

Having reviewed and considered the materials in the court file, including the trial transcript and exhibits, the parties' stipulated facts, the jury instructions, the special verdict form, the parties' briefs, and the relevant law, the court makes the following findings and conclusions:

1.      Plaintiff GSCO describes itself (as well as its claimed predecessor, "The Grand Slam Club") as a sheep hunting conservation and record keeping organization that documents and bestows awards for certain defined criteria.[4]  (Doc. 25 at 4-6, ¶¶ 10-14.)

2.      Defendant FNAWS describes itself as a Wyoming non-profit corporation, incorporated in 1977.  (Doc. 37 at 29-30, ¶¶ 1-4.)  Specifically, FNAWS has the partial mission "to promote and enhance increasing populations of indigenous wild sheep, to safeguard against their decline or extinction, and to fund programs for the professional management of these populations."  (*Id.* at 30, ¶ 4.)  Defendant ISHA describes itself as "an international record keeping and conservation organization for sheep and goat hunters," which has been operating as a California non-profit corporation since 1975.  (*Id.* at ¶¶ 5-6.)  In 2005, FNAWS and ISHA combined their operations.  (*Id.* at ¶ 7.)

3.      For many years, GSCO and FNAWS worked together, with GSCO regularly participating in FNAWS' annual conventions.  (Doc. 234 at 13, ¶ 14.)  In 1995, GSCO and FNAWS operated collaboratively under a written agreement, which was renewable for additional years (the "1995 Agreement").  (*See* Pl.'s Trial Ex. 85.)  But, the parties'

---

[4] For example, GSCO bestows a "Grand Slam of North American Wild Sheep" award to "an individual hunter [who] takes one each of the four different North American wild sheep," specifically the Dall, Stone, Rocky Mountain Bighorn, and Desert Bighorn.  (Doc. 25 at 4, ¶ 10; Doc. 311 at 13:19-25.)

cooperative alliance deteriorated, and GSCO decided not to renew the 1995 Agreement for the 2005 year, evidenced by GSCO's notification letter, dated February 26, 2004. (*See* Def.'s Trial Ex. 115.)

4.      GSCO began to believe that FNAWS was unlawfully infringing its common law intellectual property, and in response, on August 4, 2004, filed trademark and service mark registration applications for the marks: GRAND SLAM, GRAND SLAM OF NORTH AMERICAN WILD SHEEP, OVIS WORLD SLAM, CAPRA WORLD SLAM, 3/4 GRAND SLAM, and 3/4 SLAM.[5]   (*See* Pl.'s Trial Exs. 1, 2, 3, 4, 5 & 240; Doc. 234 at 13, ¶ 13.)  GSCO also sent FNAWS a cease and desist letter, dated September 23, 2004, informing FNAWS of GSCO's claimed intellectual property rights and pending applications, and requesting that FNAWS cease and desist from further use of the marks.  (Pl.'s Trial Ex. 240.)   FNAWS opposed the registration applications, specifically filing Notices of Opposition on October 25, 2005 as to the marks GRAND SLAM, GRAND SLAM OF NORTH AMERICA WILD SHEEP, 3/4 GRAND SLAM, and 3/4 SLAM.  (See Pl.'s Trial Exs. 162, 163, 164 & 165.)

5.      Thereafter, in an effort to reach an understanding of each other's respective intellectual property, GSCO and FNAWS entered into "An Agreement of Goodwill" (the "2005 Agreement") on June 13, 2005.  (Pl.'s Trial Ex. 41.)  The 2005 Agreement stated in

---

[5] Both parties have also indicated that the marks 3/4 GRAND SLAM, 3/4 SLAM, OVIS WORLD SLAM and CAPRA WORLD SLAM are derivatives of the GRAND SLAM and GRAND SLAM OF NORTH AMERICAN WILD SHEEP marks.  (Doc. 252 at 11; Doc. 274 at 1 n.1.)

part that "FNAWS will release GSCO and discharge any and all claims arising out of their relationship established by any prior written agreements between the two organizations." (*Id.* at 1.) Additionally, the agreement specified that "GSCO and FNAWS agree . . . to request permission to the use of one another's Intellectual Property." (*Id.*) Finally, the 2005 Agreement stated that "[GSCO] agrees that [FNAWS] is free to use its trademark filing number 78-462159 [i.e. the mark GRAND SLAM OF NORTH AMERICAN WILD SHEEP] for the purpose of recognizing their members." (*Id.* at 2; Doc. 25 at 7, ¶ 19.)

6.      On July 25, 2006 and August 29, 2006, GSCO obtained federal service mark and trademark protection for its OVIS WORLD SLAM and GRAND SLAM marks, respectively.  (Pl.'s Trial Exs. 1 & 4.)

7.      The 2005 Agreement did not resolve the parties' disagreements and GSCO sent FNAWS a second cease and desist letter, dated October 5, 2006.  (Pl.'s Trial Ex. 47.)  The second letter likewise did not resolve the disagreements.  (*See* Doc. 1.)

8.      On November 9, 2006, GSCO filed its initial Complaint against Defendants. (*Id.*)  The case was assigned to Judge Virginia Emerson Hopkins.

9.      Thereafter, on February 6, 2007 and March 20, 2007, GSCO obtained federal service mark protection for its marks CAPRA WORLD SLAM and GRAND SLAM, respectively.  (Pl.'s Trial Exs. 2 & 5.)

10.     In part to reflect the federally issued service marks, GSCO filed an Amended Complaint on April 5, 2007.  (*See* Doc. 23; Doc. 25.)  The Amended Complaint alleged

seven separate counts against Defendants, including (1) federal trademark infringement and dilution, (2) federal false designation of origin, (3) common law trademark and service mark infringement and unfair competition under the laws of Alabama, (4) breach of the 2005 Agreement, (5) tortious interference with business relations, (6) copyright infringement, and (7) likelihood of injury to business reputation or of dilution under state law.  (Doc. 25 at 15-24, ¶¶ 40-82.)  Specifically, the Amended Complaint alleged that Defendants infringed GSCO's claimed marks "GRAND SLAM, OVIS WORLD SLAM, CAPRA WORLD SLAM, GRAND SLAM OF NORTH AMERICAN WILD SHEEP, 3/4 SLAM, and 3/4 GRAND SLAM," as well as GSCO's "copyrighted CAPRA WORLD SLAM and OVIS WORLD SLAM documents."[6]  (*See id.* at 8, ¶ 23.)

11.     Defendants filed their final Amended Answer on May 21, 2007.  (Doc. 37.)  In the Amended Answer, Defendants set forth multiple affirmative defenses, including laches, acquiescence, unclean hands, and abandonment.  (*Id.* at 20, ¶ 2, 29, ¶ 35.) Defendants also alleged multiple counterclaims against GSCO, including Count Three, which seeks to cancel GSCO's trademark registrations pursuant to section 37 of the Lanham Act, codified at 15 U.S.C. § 1119.  (*See id.* at 42, ¶¶ 55-61.)

12.     Following extensive litigation, the case proceeded to trial, which commenced on January 22, 2008.  (*See* Doc. 311 at 1.)  At the conclusion of the seven day jury trial,

---

[6] GSCO had obtained federal copyright protection for the OVIS WORLD SLAM and CAPRA WORLD SLAM documents on October 30, 2006 and December 11, 2006, respectively. (Pl.'s Trial Exs. 8 & 13.)

Judge Hopkins instructed the jury on the law that it must follow and apply in deciding the case. (Doc. 234 at 1.)  Neither GSCO nor Defendants objected to the jury instructions.  (*See, e.g.*, Doc. 308 at 78:19-24, 146:8-22; Doc. 314 at 15.)  Thus, both parties waived any objections to the instructions, as well as any argument that the jury's findings were somehow tainted by the instructions.  *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129, 1151 (11th Cir. 2007) (holding that defendant's argument "that the jury findings were somehow tainted necessarily fails" because defendant did not object to jury instructions but instead consented to the instructions and the verdict form).

13.   The jury instructions detailed the requirements for trademark validity and unfair competition, including instructions on how a trademark is obtained, registration, infringement, the burdens of proof, the different classifications for trademarks, the elements of unfair competition, Defendants' defenses, and trademark damages.  (Doc. 234 at 14-36.) Regarding Defendants' defenses, the instructions specifically discussed the defense of abandonment.  (*Id.* at 33.)  The instructions stated that "[t]he owner of a trademark cannot exclude others from using the trademark if it has been abandoned," specified that Defendants have the burden of proof, and detailed how "[t]he owner of a trademark abandons the right to exclusive use of the trademark."[7]  (*Id.*)  The jury instructions also detailed the law for

---

[7] Specifically, the jury instructions stated that:

The owner of a trademark abandons the right to exclusive use of the trademark when the owner:
1. discontinues use in the ordinary course of trade, intending not to resume using it;
2. acts or fails to act so that the trademark's principal meaning to prospective

copyright infringement, breach of contract, and interference with business relations.  (*Id.* at

36-50.)  As to damages for interference with business relations, the instructions summarized

the distinctions between compensatory and punitive damages, and specified the differences

between malice, wantonness, and willfulness.  (*Id.* at 46-50.)

14.     Judge Hopkins provided the jury with a special verdict form, consisting of

twenty-one interrogatories set out in four sections.  (*See* Doc. 235.) Following deliberations,

the jury returned a verdict, specially finding, *inter alia*, that:

a.     GSCO has valid trademarks in the marks GRAND SLAM, GRAND SLAM

OF NORTH AMERICAN WILD SHEEP, CAPRA WORLD SLAM, OVIS

WORLD SLAM, 3/4 SLAM, and 3/4 GRAND SLAM.  (*Id.* at Question I.1.)

b.     FNAWS infringed the trademark or engaged in unfair competition as to the

marks GRAND SLAM, GRAND SLAM OF NORTH AMERICAN WILD

SHEEP, CAPRA WORLD SLAM, 3/4 SLAM, and 3/4 GRAND SLAM.  (*Id.*

at Question I.2.)  The jury also found that ISHA infringed the trademark or

engaged in unfair competition as to the marks CAPRA WORLD SLAM and

OVIS WORLD SLAM.  (*Id.*)

c.     GSCO's damages due to Defendants' infringement or unfair competition, other

---

consumers has become the product or service itself and not the provider of the product
or service; or
3.  fails to exercise adequate quality control over the goods or services provided under
the trademark by a licensee.

(Doc. 234 at 33.)

than punitive damages, amounted to $500,000 to be paid by FNAWS, and $500,000 to be paid by ISHA.  (*Id.* at Question I.4.)

d.    FNAWS and ISHA both infringed GSCO's Capra World Slam and Ovis World Slam documents.  (*Id.* at Question II.1.)

e.    GSCO's statutory damages due to Defendants' copyright infringement amounted to $50,000 to be paid by FNAWS, and $50,000 to be paid by ISHA. (*Id.* at Question II.2.)

f.    The 2005 Agreement was a valid contract.  (*Id.* at Question III.A.1.)

g.    FNAWS breached the 2005 Agreement.  (*Id.* at Question III.A.2.)

h.    GSCO's damages due to FNAWS' breach of the 2005 Agreement amounted to $100,000 to be paid by FNAWS.  (*Id.* at Question III.A.3.)

I.    GSCO did not breach the 1995 Agreement.  (*Id.* at Question III.B.1.)

j.    GSCO did not breach the 2005 Agreement.  (*Id.* at Question III.B.2.)

k.    FNAWS and ISHA both tortiously interfered with GSCO's business relations. (*Id.* at Question IV.A.1.)

l.    GSCO's damages due to Defendants' tortious interference with GSCO's business relations, other than punitive damages, amounted to $200,000 to be paid by FNAWS, and $200,000 to be paid by ISHA.  (*Id.* at Question IV.A.2.)

m.    Both FNAWS and ISHA consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to their tortious interference with

9

GSCO's business relations.  (*Id.* at Question IV.A.3.)

n.      GSCO was due $200,000 to be paid by FNAWS, and $200,000 to be paid by

ISHA in punitive damages for their tortious interference with GSCO's

business relations.  (*Id.* at Question IV.A.4.)

o.      GSCO did not tortiously interfere with FNAWS's business relations.  (*Id.* at

Question IV.B.1.A.)

15.    After reading the special jury verdict form, Judge Hopkins conducted a

conference with GSCO and Defendants outside the jury's presence.  (*See* Doc. 308 at 155-

65.)  During the conference, Judge Hopkins and the parties initially discussed the jury's

response to Question I.3.[8]  (*See id.* at 155-60.)  Despite the jury's unexpected answer, neither

GSCO nor Defendants requested that the jury give additional clarification.[9]  (*Id.*)  As a result,

_____

[8] Question I.3 asked the jury to "list the terms or marks which you find constituted infringement or unfair competition when used by either or both Defendants." (Doc. 235 at Question I.3.)  During deliberations, the jury submitted a question concerning Question I.3, asking whether it "need[ed] to list specific instances (dates, times, publications) to where each infringement or unfair competition occurred." (Doc. 236.)  Judge Hopkins and the parties agreed to answer "no." (Doc. 308 at 147:24-148:1, 17-23.)  For all that, the jury answered the question unexpectedly, responding "Magazines, Registration Applications, Acknowledgement [sic] of 3/4 Slams 3/4 Raffles, News, Website, Catalogs." (Doc. 235 at Question I.3.)

[9] Judge Hopkins informed Defendants of her belief that if they did not ask for the jury to return and clarify the answer, that because Defendants were aware of the issue and had opportunity to request clarification, they would "waive the ability to [later] attack the verdict as inconsistent on [that] basis." (Doc. 308 at 158:1-10.)  Defendants responded that "[i]rrespective of whether [the jury] come[s] back in, [Defendants] still would have the argument the jury did not understand the instructions because their attempt to answer the question was unresponsive." (*Id.* at 159:19-22.)  Given their position, Judge Hopkins did not ask the jury to clarify their answer. (*Id.* at 160:6-8.)

Defendants do not argue the jury failed to understand and follow the jury instructions in their Post-Judgment Motion Pursuant to Rule 52, or in their accompanying brief and later reply. (*See* Doc. 249, Doc. 252, Doc. 281.)  Rather, Defendants make the argument in their separate Brief in Support

Judge Hopkins stated that she would publish the jury verdict, but would not enter judgment until after deciding the still unresolved issues, including Defendants' remaining affirmative defenses and cancellation counterclaim.  (*See* Doc. 308 at 160-65.)  Judge Hopkins gave the parties ten days to file their pleadings, and then four days to respond.  (*Id.* at 162-63.)

16.     Defendants did not file their Post-Verdict Brief regarding their remaining defenses and counterclaim within ten days.  (*See* Doc. 240.)  Judge Hopkins entered Judgment in favor of GSCO, and issued a Permanent Injunction against Defendants; Judge Hopkins noted, however, that "the court's entry of judgment should not be construed as ruling on the merits of [Defendants' Post-Verdict Brief]," and that Defendants "may still make all post-judgment motions as are permitted under the Federal Rules of Civil Procedure."[10]  (*See* Doc. 242; Doc. 241 at 3 n.1.)

------

of Motion Pursuant to Fed. R. Civ. P. 59.  (*See* Doc. 261 at 25-28.)  Still, because the argument potentially affects the findings of fact and conclusions of law regarding Defendants' affirmative defenses and cancellation counterclaim, the court briefly notes here that it is without merit.  The court addresses the argument in greater detail in Part II.D.2.e. of the court's contemporaneously filed Memorandum Opinion.

[10] Defendants argue that Judge Hopkins entered the Judgment and Permanent Injunction without entering findings of fact and conclusions of law regarding Defendants' affirmative defenses and cancellation counterclaim, as required by Fed. R. Civ. P. 52.  (*See* Doc. 252 at 2-5, Doc. 241, Doc. 242.)  Presumably, Judge Hopkins considered those issues either resolved by the jury verdict or waived by Defendants' untimely filing.  (*See* Doc. 241 at 3 n.1, 5, Doc. 242.)  Still, Defendants are correct that "[t]he Federal Rule 52(a) requirement that the trial court find the facts specially and state separately its conclusions of law is mandatory and must be fairly observed by district judges.  The requirement may not be waived by the parties."  9C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2574 (3d ed. 2008) (footnote omitted); *see also United States v. Rohm & Haas Co.*, 500 F.2d 167, 176 (5th Cir. 1974) (vacating district court's order enjoining defendant from further deep sea barging because the order lacked required findings of fact and conclusions of law).  So, to the extent Judge Hopkins failed to enter findings of fact and conclusions of law, this court does so now under Fed. R. Civ. P. 52(a).  And, to the extent Judge Hopkins

11

17.     After the parties filed multiple post-judgment motions, including Defendants'

Post-Judgment Motion Pursuant to Rule 52, (Doc. 249), Judge Hopkins recused herself from

the case.  (*See* Doc. 283.)  The case was subsequently reassigned to the undersigned.  (*Id.*)

18.     On May 21, 2009, this court ordered the parties "to brief the issue of how they

believe[d] this court should proceed with the case."  (Doc. 290.)  GSCO filed a Brief

Supporting Certification of the Record on September 28, 2009.  (Doc. 314.) Defendants filed

their Brief in Support of Necessity of New Trial on November 6, 2009.  (Doc. 323.)  GSCO

filed a reply on November 20, 2009.[11]  (Doc. 324.)

19.     In Defendants' Post-Judgment Motion Pursuant to Rule 52, Defendants argue

---

considered the Memorandum Opinion, (Doc. 241), or Final Judgment and Permanent Injunction, (Doc. 242), to include findings of fact and conclusions of law, the court considers these Findings and Conclusions to constitute amended or additional findings pursuant to Fed. R. Civ. P. 52(b).

[11] The parties' briefs primarily addressed Rule 63 of the Federal Rules of Civil Procedure, which states the procedure for when a judge is unable to proceed in a case.  The Rule states:

> If a judge conducting a hearing or trial is unable to proceed, any other judge may proceed upon certifying familiarity with the record and determining that the case may be completed without prejudice to the parties.  In a hearing or a nonjury trial, the successor judge must, at a party's request, recall any witness whose testimony is material and disputed and who is available to testify again without undue burden. The successor judge may also recall any other witness.

Fed. R. Civ. P. 63.  But, "[s]uccessor judges need only certify their familiarity with those parts of the record that relate to the issues before the successor judge."  *Mergentine Corp. v. Washington Metro. Area Transit Auth.*, 166 F.3d 1257, 1265 (D.C. Cir. 1999).  Pursuant to those requirements, and having reviewed the record, including the approximately 1,700 page trial transcript, as well as the remaining post-judgment motions, this court certifies that it has made itself familiar with the record and has determined that the proceedings in this case may be completed without prejudice to the parties.  Further, and to the extent necessary, the court notes that it made no credibility determinations in entering these Findings and Conclusions, nor was any witness's testimony material to the court's analysis.

that "GSCO's registered marks GRAND SLAM and GRAND SLAM OF NORTH AMERICAN WILD SHEEP were abandoned through naked licensing [i.e. the cancellation counterclaim] and that GSCO's claims for trademark infringement and its requests for relief are barred by the principles of equity," particularly the doctrines of abandonment, laches, acquiescence, and unclean hands.  (Doc. 252 at 5, 11-21.)

20.    As GSCO correctly points out, (Doc. 314 at 16), "[i]t is well settled that where claims at law and in equity are joined and the legal claims are tried separately by a jury, the jury's verdict operates as a finding of fact binding on the trial court in its determination of the equitable claims," *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129, 1151 (11th Cir. 2007) (quoting *Dybczak v. Tuskegee Inst.*, 737 F.2d 1524, 1526-27 (11th Cir. 1984)). In *BUC International Corp. v. International Yacht Council Ltd.*, a boating price guide publisher, which developed an online directory of yacht listings called BUCNET, brought a copyright infringement action against a competing yacht brokerage association that published yacht listings online.  *Id.* at 1133-35.  When the case proceeded to trial, the district court provided the jury with a special verdict form.  *Id.* at 1138-39.  The jury specially found that the plaintiff publisher owned valid copyright registrations and that the defendant association infringed those copyrights.  *Id.*  The jury awarded the publisher $1,598,000 in actual damages.  *Id.* at 1138.  Upon receipt of the special verdict form, the district court entered a declaratory judgment in favor of the publisher on the association's counterclaims, which challenged the validity of the publisher's copyrights.  *Id.* at 1151.  On appeal, the

13

United States Court of Appeals for the Eleventh Circuit held that the district court was bound by the jury's factual determinations. *Id.* It stated that "[t]he jury's determination that [the publisher's] copyrights were valid was necessarily based on several factual findings, including that [the publisher's] compilation contained original elements of creative authorship." *Id.* The Eleventh Circuit further noted that because the association did not object to the jury instructions, thereby waiving any objections, the "[t]he district court, in its evaluation of the declaratory judgment, was thus bound by the jury's finding that [the publisher] owned valid copyrights." *Id.* For that reason, the Eleventh Circuit affirmed the declaratory judgment order. *Id.*

21.    Here, regarding their counterclaim seeking to cancel GSCO's trademark registrations, i.e. Count Three of their Amended Answer, Defendants argue that "GSCO's marks GRAND SLAM and GRAND SLAM OF NORTH AMERICAN WILD SHEEP are due to be cancelled, because GSCO abandoned its marks through naked licensing." (Doc. 252 at 6; Doc. 37 at 42, ¶¶ 55-61.) Specifically, Defendants claim GSCO "fail[ed] to exercise adequate quality control over [its alleged licensee Safari Club International's ("SCI")] use of those marks." (*Id.* at 10.) That said, Judge Hopkins specifically instructed the jury on the doctrine of abandonment. (Doc. 234 at 33.) Nevertheless, the jury specially found, *inter alia*, that GSCO had valid trademarks in the marks GRAND SLAM and GRAND SLAM OF NORTH AMERICAN WILD SHEEP. (Doc. 235 at Question I.1.) It further found that Defendants infringed those marks, and awarded GSCO $1,000,000 in

14

damages.  (*Id.* at Question I.2, I.4.)  Therefore, as GSCO contends, by finding that GSCO had valid trademarks in those marks, the jury necessarily found that GSCO did not abandon the marks by "fail[ing] to exercise adequate quality control over the goods or services provided under the trademark by a licensee."  (Doc. 234 at 33; Doc. 274 at 25; Doc. 314 at 41.) Because this court is bound by the jury's factual findings under *BUC International Corp.*, the court is of the opinion that Defendants' cancellation counterclaim is due to be dismissed.[12]

22.     Under Defendants' affirmative defense regarding the equitable doctrine of abandonment, Defendants maintain, as with their cancellation counterclaim, that GSCO "engaged in naked licensing with respect to its GRAND SLAM and GRAND SLAM OF NORTH AMERICAN WILD SHEEP marks by failing to exercise any control over the quality of goods and services offered to the public by its licensee, SCI."  (Doc. 252 at 11.) But again, as discussed above, the jury found that GSCO had valid trademarks in the marks GRAND SLAM and GRAND SLAM OF NORTH AMERICAN WILD SHEEP.  (Doc. 235 at Question I.1.)  As a result, the jury necessarily decided that GSCO did not abandon the marks through naked licensing.  Therefore, pursuant to *BUC International Corp.*, the court finds Defendants' abandonment defense to be without merit.

23.     Still, Defendants argue that GSCO's claims for trademark infringement are

---

[12]  What's more, Defendants have admitted that "Defendants' equitable defenses of abandonment, acquiescence, laches, and unclean hands, and its counterclaim for cancellation are inextricable from those underlying the other issues in this case."  (Doc. 261 at 2.)

barred pursuant to the equitable doctrines of laches,[13] acquiescence,[14] and unclean hands.[15] (Doc. 252 at 11-21.)   GSCO, however, argues that "Defendants' equitable affirmative defenses . . . are barred by Defendants' unclean hands and malice towards [GSCO], as demonstrated at trial and found by the jury."  (Doc. 274 at 1.)

24.     The Supreme Court of the United States detailed the doctrine of unclean hands in *Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery*:

> [T]he equitable maxim that 'he who comes into equity must come with clean hands' . . . is far more than a mere banality.  It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the [opposing party]. [The] doctrine is rooted in the historical concept of court of equity as a vehicle for affirmatively enforcing the requirements of conscience and good faith.  This presupposes a refusal on its part to be 'the abetter of iniquity.'  Thus, while 'equity does not demand that

---

[13] To assert the equitable doctrine of laches as a defense, a defendant must establish three elements: "(1) a delay in asserting a right or a claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted."  *Kason Indus., Inc. v. Component Hardware Group, Inc.*, 120 F.3d 1199, 1203 (11th Cir. 1997) (citing *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1545 (11th Cir. 1986)).

[14] The doctrine of acquiescence, which "denotes the active consent by a senior user to another's use of the mark," is an equitable defense that "requires proof of three elements: (1) the senior user actively represented that it would not assert a right or a claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice."  *SunAmerica Corp. v. Sun Life Assurance Co. of Canada*, 77 F.3d 1325, 1334 (11th Cir. 1996) (citing *Coach House Restaurant, Inc. v. Coach and Six Restaurants, Inc.*, 934 F.2d 1551, 1558 (11th Cir. 1991)).  The difference between acquiescence and laches "is that laches denotes passive consent and acquiescence denotes active consent."  *Coach House Restaurant, Inc.*, 934 F.2d at 1558.

[15] "[T]he equitable doctrine of unclean hands provides that one who has acted in bad faith, resorted to trickery and deception, or been guilty of fraud, injustice or unfairness will appeal in vain to a court of conscious."  *In re Kingsley*, 518 F.3d 874, 878 (11th Cir. 2008) (quoting *In re Garfinkle*, 672 F.2d 1340, 1346 n.7 (11th Cir. 1982)).

> its suitors shall have led blameless lives,' as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue.

324 U.S. 806, 814-15 (1945) (internal citations omitted).  The Court further stated that "one's misconduct need not necessarily have been of such a nature as to be punishable as a crime or as to justify legal proceedings of any character," but instead "[a]ny willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation of the maxim." *Id.* at 815. Finally, the Court noted that the "maxim necessarily gives wide range to the equity court's use of discretion in refusing to aid the unclean litigant.  It is 'not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion.'" *Id.* (citing *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 245, 246 (1933)).

25.    In the instant case, as GSCO points out, the jury specially found that Defendants "infringed or engaged in unfair competition" as to GSCO's valid marks, and awarded GSCO $1,000,000 in compensatory damages.  (Doc. 235 at Question I.2, I.4; Doc. 274 at 2-6.)  The jury further decided that Defendants infringed GSCO's Capra World Slam and Ovis World Slam copyrighted documents, awarding GSCO $100,000 in statutory damages.  (Doc. 235 at Questions II.1-2.)  Also, the jury determined that Defendants "tortiously interfere[d] with [GSCO's] business relations," and "consciously or deliberately engage[d] in oppression, fraud, wantonness, or malice with regard to its tortious

17

interference."[16]  (*Id.* at Questions IV.A.1, 3-4; Doc. 274 at 2-4.)  And, regarding damages for those claims, the jury awarded GSCO $400,000 in compensatory damages, to be paid equally by Defendants, as well as punitive damages in the amount of $400,000, again to be paid equally by Defendants.  (Doc. 235 at Question IV.A.4.)  What's more, the jury found that the 2005 Agreement was a valid contract and that FNAWS breached the agreement; the jury awarded GSCO $100,000 for the breach.  (*Id.* at Questions III.A.1-3.)  By contrast, the jury decided that GSCO did not "tortiously interfere with FNAWS's business relations," and that GSCO did not breach the 1999 Agreement or the 2005 Agreement.  (*Id.* at Questions III.B.1-2, IV.B.1.)  For these reasons, among others, GSCO claims that "[t]he jury verdict . . . plainly demonstrates Defendants' unclean hands."  (Doc. 274 at 3.)  The court agrees.  Despite Defendants' argument that "[s]uch inferences [from the jury's verdict] would be mere guesswork," (Doc. 281 at 3), the court finds that the verdict demonstrates that the jury found Defendants guilty of the "injustice or unfairness," *In re Kingsley*, 518 F.3d at 878 (quoting *In re Garfinkle*, 672 F.2d at 1346 n.7), "which rightfully can be said to transgress equitable standards of conduct," *see Precision Instrument Mfg. Co.*, 324 U.S. at 815.  Bound by the those findings under *BUC International Corp.*, the court finds that Defendants are with

---

[16] GSCO based its tortious interference claims in part on Defendants' infringement of GSCO's marks.  (*See* Doc. 25 at 22, ¶¶ 70-73.)

18

unclean hands.  Accordingly, Defendants are barred from asserting their remaining defenses of laches, acquiescence, and unclean hands.[17]

For the foregoing reasons, the court finds that Defendants have failed to establish the affirmative defenses of abandonment, laches, acquiescence, and unclean hands.  The court further finds that Defendants' counterclaim seeking the cancellation of GSCO's trademark registrations pursuant to section 37 of the Lanham Act, codified at 15 U.S.C. § 1119, i.e. Count Three of Defendants' Amended Answer, is due to be dismissed.  A separate Order in conformity with these Findings and Conclusions will be entered contemporaneously herewith.

**DONE** this 22nd day of September, 2010.


_Sharon Lovelace Blackburn_
SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE

---

[17] As GSCO points out, Defendants' unclean hands would also bar their affirmative defense of abandonment, as well as their cancellation counterclaim.  (Doc. 274 at 1-2.)